[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANT'S AND PLAINTIFF'S MOTIONS FORCONTEMPT (NOS. 135 AND 136)
Each of the parties have filed motions for contempt, the defendant claiming the plaintiff, her ex husband, has failed to pay more than three consecutive alimony payments so that his interest in the real property at 77 Wilson Road in Easton, Connecticut should pass to her and plaintiff's motion claiming that the defendant has failed to comply with the order of the court entered in 1980 for the sale of said property.
A listing of the proceedings in this case is essential to any decision that the court may enter.
On August 13, 1980, the Honorable Milton H. Herman filed his CT Page 10920 Memorandum of Decision after a contested trial before him. At the time of his decision the parties had been married for 16 years. Their dispute was chiefly over the real property of the parties in Easton, Connecticut, as noted above, each party seeking assignment of the other parties' interest in the property. Judge Herman in his Memorandum of Decision provided, in part, as follows:
 The court would and does order that the real property of the parties, located at 77 Wilson Road in Easton, Conn., be disposed of by sale, and that the net proceeds, after the payment or the deduction of the first mortgage, taxes, insurance, costs and fees incidental to the sale of the property, as well as any other charges properly attributable to the ownership, that they be divided as follows; Sixty-five percent (65%) of the net proceeds shall be paid to the defendant-wife, and thirty-five percent (35%) shall be paid to the plaintiff-husband.
 The plaintiff is ordered to remove a present blanket mortgage in the sum of $200,000.00 or to save the defendant harmless from its provisions.
 The plaintiff is ordered to make all necessary payments to bring the first mortgage up to date as to payments, and failing to do so, the necessary payments to accomplish that objective shall be deducted from the net proceeds, which he shall receive from the sale of the property."
A number of motions were filed subsequent to the judgment upon which no action has been noted. These include a motion for modification on September 2, 1980, a motion for contempt on September 26, 1980, a motion for contempt on October 16, 1980, a motion for contempt filed March 30, 1981, a motion for modification on March 31, 1981 which was apparently granted on June 24, 1981, modifying the award of alimony from $100 per week to $50 per week.
On January 7, 1982, an arrearage was found by Judge Frederick Freedman. He ordered: "Arrearage of $1300 as of 1/7/82. Current CT Page 10921 orders of $50.00/wk. to be paid." Another motion for contempt and motion for modification was filed on January 22, 1982 and an order for hearing thereon for January 29, 1982. On January 29, 1982, the parties appeared before Jacobson, J. On the motion for modification, the court granted the relief requested by the defendant and ordered that if the plaintiff failed to make three consecutive alimony payments, then in that event there would be a trigger mechanism that his thirty-five (35%) percent interest in the family home would go automatically to the defendant in lieu of any further alimony. Upon the entry of this order, both counsel thanked the court for its order. Both parties indicated that they understood the court's order and both parties indicated that they had no questions regarding the order. There was no objection noted upon the record. (See defendant's exhibit 2.)
Subsequently, on April 28, 1983, the defendant filed a motion for modification of judgment claiming that alimony had not been paid for three consecutive weeks and seeking reimbursement for monies paid by the defendant which had been ordered to be paid by the plaintiff and a motion for contempt claiming an arrearage of $5,950, $3,600 prior to January 29, 1982 and $2,350 subsequent to that date. Neither of these motions were heard.
On May 16, 1983, the plaintiff filed a motion for contempt claiming the defendant was in contempt for her failure to act in good faith in diligently pursuing the sale of the real property. This motion also was not heard.
On August 8, 1990, the defendant sought an order for hearing on a motion for contempt that was set down to be heard on September 13, 1990 claiming three consecutive weeks of alimony payments had been missed and claiming the plaintiff's interest in the real property be ordered automatically to the defendant. As before, this brought forth a motion for contempt from the plaintiff identical to his motion of May 16, 1983 plus a motion for travel allowance for the plaintiff's travel expenses from Deerfield Beach, Florida and a motion for counsel fees "to defend the defendant's frivolous and vexatious motion for contempt." These motions were heard by Hauser, J. on January 3, 1991 when the parties reached agreement that the defendant would try to buy out the plaintiff. The agreement provided further that the parties had 45 days to reach an agreement and, if no agreement was reached after 45 days, the house would go on the market. The order entered by Jacobson, J. on January 29, 1982 was not challenged by either party at that time. CT Page 10922
This now brings us to the present time. Now before the court is the defendant's repeated motion for contempt claiming three consecutive weeks of alimony not paid and requesting the plaintiff's interest in the real property be transferred to the defendant. The plaintiff has likewise filed his identical motion for contempt claiming the defendant has failed to comply with the order of the court with regard to sale of the property.
The defendant presented a support enforcement officer who testified that the plaintiff did miss payments between August 12, 1994 and September 22, 1994, a period of more than three successive weeks. (See defendant's exhibit 1.) Certainly, based upon Judge Jacobson's order, the plaintiff's thirty-five (35%) interest in the family home should pass automatically to the defendant. Plaintiff, however, for the first time, has raised the question of jurisdiction regarding Judge Jacobson's order and the doctrine of "clean hands," claiming that the defendant has not abided by Judge Herman's order to sell this property, that she has not done equity and that "she who seeks equity should do equity."
As to the plaintiff's latter claim, the court has had insufficient evidence on the issue of the property sale to determine whether the defendant comes into this court with "clean hands." The defendant argues that the lack of sale of the property lies with the plaintiff because the blanket mortgage was not removed in accordance with Judge Herman's original orders. There has been no evidence offered on this issue nor has there been evidence on the plaintiff's motion for contempt. The plaintiff's motion for contempt is, therefore, denied without prejudice to such a motion being refiled and evidence offered upon a subsequent date.
As to the plaintiff's claim that Judge Jacobson lacked jurisdiction to enter his order on January 29, 1982, the plaintiff cites the cases of Ammirata v. Ammirata, 5 Conn. App. 198 (1985) and Broaca v. Broaca, 181 Conn. 463 (1980). The issue here is whether or not this court may reopen the judgment of the court entered in January 1982 and whether that court had the jurisdiction to reopen the judgment of August 13, 1980.
The order of Judge Herman in August, 1980 that this property be sold and the net proceeds divided, the plaintiff to receive a thirty-five (35%) percent of the share of the net proceeds, was an assignment of property. It was an order entered under the CT Page 10923 provisions of § 46b-81 of the General Statutes. As was stated in the case of Bunche v. Bunche, 180 Conn. 285 at 287-88 (1980): "The court's judgment in an action for dissolution of a marriage is final and binding upon the parties, where no appeal is taken therefrom, unless and to the extent that statutes, the common law or rules of court permit the setting aside or modification of that judgment."
Judge Jacobson, in January, 1982, reopened that judgment and entered certain orders modifying the original judgment of Judge Herman. He would have had the authority to do that under the provisions of § 46b-86(a) of the General Statutes. However, this was not the modification of a "periodic payment of permanent alimony or support" as provided by § 46b-86(a). Nor was there any other statutory authority for Judge Jacobson's order. The court, then, in 1982 had no jurisdiction to alter the terms of Judge Herman's property assignment. Ammirata v. Ammirata, 5 Conn. App. 198,201 (1985). A judgment without jurisdiction is void abinitio. Broaca v. Broaca, 181 Conn. 463, 467 (1980). The court, therefore, vacates the order entered by Judge Jacobson on January 29, 1982. Since that order is vacated, the plaintiff cannot be in contempt of that order and the motion for contempt is denied.
The parties' attention is directed, however, to the dissenting opinion of Chief Justice Peters in Broaca v. Broaca,181 Conn. 463 at 473. Since the parties had full opportunity to raise the issue of jurisdiction at the time of the entry of Judge Jacobson's order and for twelve years thereafter, it might well be argued that it is now too late to attack that order. This court, however, adheres to its order vacating the order of Judge Jacobson and the denial of the defendant's motion for contempt.
The request for counsel fees in both motions is denied.
EDGAR W. BASSICK, III, JUDGE CT Page 10924